**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
IOWA CENTRAL DIVISION**

| | |
|---|---|
| KAREN L. HOOVER,<br><br>　　　　PLAINTIFF,<br><br>vs.<br><br>CONSUMER PORTFOLIO SERVICES, INC,<br><br>　　　　DEFENDANT. | **Civil Action No.**<br><br>**COMPLAINT and DEMAND FOR JURY TRIAL** |

NOW COMES the Plaintiff, Karen L. Hoover ("Plaintiff" or "Hoover") by and through her attorney, L. Ashley Zubal, and for her Complaint against the Defendant, Consumer Portfolio Services, Inc. (hereinafter "Defendant" or "Consumer Portfolio"), alleges as follows:

## I.　　INTRODUCTION

1. This is an action for damages brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq, (hereinafter "FDCPA") and the Iowa Debt Collection Practices Act, § 537.7103, et seq, (hereinafter "IDCPA") which prohibit debt collectors from engaging in abusive, deceptive, and unfair collection practices.

## II.　　JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367. Venue in this District is proper in that the Defendant transacts business in Iowa and the conduct complained of occurred here.

1

### III. PARTIES

3. Plaintiff, Karen Hoover, is a natural person residing in Warren County, Iowa.

4. Defendant, Consumer Portfolio, is a business principally located in California who is engaged in the collection of debts owed to another in the State of Iowa.

5. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3). Plaintiff is a "debtor" as that term is defined by Iowa Code § 537.7102(6).

6. Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Iowa Code § 537.7102(5).

### IV. FACTUAL ALLEGATIONS

7. At some point in time, the Plaintiff incurred a financial obligation to an original creditor that was primarily for personal, family or household purposes, that allegedly went into default for late payment, and is therefore an alleged "debt" as that term is defined by 15 U.S.C. § 1692a(5) and Iowa Code § 537.7102(3).

8. Sometime thereafter, the debt was sold, assigned, or otherwise transferred to the Defendant for collection, when thereafter the Plaintiff began receiving collection communications from the Defendant in an attempt to collect this debt.

9. The Defendant began placing collection calls to the Plaintiff on her cell phone and at her place of employment in 2008.

10. Sometime in June, 2011, the Plaintiff began received a collection call from the Defendant at her place of employment. The Defendant's representative, Joann, requested to speak with the Plaintiff with regard to a personal matter. Once the

Plaintiff was on the phone, Joann immediately began asking the Plaintiff how she intended to made payment on a delinquent debt the Defendant was collecting on. The Plaintiff explained that it was not a good time to talk because she was at work and that she was not allowed to receive calls at her place of employment unless it was an emergency. The Plaintiff requested the Defendant cease contacting her at her place of employment and ended the phone call.

11. Prior to the time at which the Plaintiff began receiving collection calls from the Defendant at her place of employment, the Plaintiff had been receiving calls from the Defendant on her cell phone and had also received correspondence from the Defendant at her home address. As such, the Defendant was contacting the Plaintiff for purposes other than to obtain location information.

12. Notwithstanding the Plaintiff's notice to the Defendant in June of 2011, the Defendant continued to contact the Plaintiff's place of employment approximately twice a month. During each call to the Plaintiff's employer between June, 2011 and August, 2011, the Defendant's representatives would leave messages with the Plaintiff's coworkers that CPS was trying to get in touch with her with regard to a personal matter and to have the Plaintiff return the call.

13. Sometime in August, 2011, the Defendant's Representative Joann contacted the Plaintiff's place of employment and spoke with the Plaintiff's supervisor, Jane Place. Joann asked to speak with the Plaintiff with regard to a personal matter. Jane explained to Joann that she was aware of what the call was in regard to. She further explained to Joann that the Plaintiff was not to receive these types of calls at work and that said calls were putting the Plaintiff's job at risk. Jane requested

the Defendant cease contacting the Plaintiff's place of employment and ended the call.

14. The Defendant continued to contact the Plaintiff's place of employment approximately twice a month. After the August, 2011 phone conversation with the Plaintiff's supervisor, Jane Place, the Defendant began leaving a different message with the Plaintiff's co-workers to let the Plaintiff know that they called, that the Plaintiff would be aware of what the call was in regard to, and left a return phone number for the Plaintiff to call back.

15. Between August, 2011 and May, 2012, the Plaintiff continued to receive collection calls from the Defendant at her place of employment approximately one to two times per month. During each communication, representatives of the Defendant left messages with the Plaintiff's coworker who requested that the Plaintiff call them back, provided a telephone number, and stated the Plaintiff would know what the call was in regard to.

16. On or about May 04, 2012, the Plaintiff received a collection call at her place of employment from the Defendant's representative Joann. The Plaintiff's supervisor, Jane Place, answered the call and spoke with Joann. Joann requested to speak with the Plaintiff. Ms. Place stated she was unavailable and requested to take a message and asked what the call was in regard to. Joann stated that the Plaintiff knew what the call was in regard to and left a phone number for the Plaintiff to return the call. The call ended.

17. On or about May 22, 2012, the Defendant began leaving automated messages for the Plaintiff at her place of employment. The message stated in part that the call was from a debt collector and for the Plaintiff to return the call to CPS

4

at a number provided. On or about May 29, 2012, the Defendant left an identical automated voice message which was heard by one of the Plaintiff's coworkers.

18. The call placed by the Defendant's representatives were "communications" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

19. As a result of the Defendant's representative's collection calls, the Plaintiff felt embarrassment, humiliation, anxiety, nervousness, confusion, frustration, fear, loss of concentration at work, sense of helplessness, and anger.

20. The collection calls placed by the Defendant to the Plaintiff's place of employment were collection communications in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692c(a)(1), 1692c(a)(3); 1692c(b), 1692d, 1692d(5), 1692d(6), 1692e, 1692e(10), 1692e(11), and 1692f, amongst others.

21. The collection calls placed by the Defendant to the Plaintiff's place of employment were collection communications in violation of numerous and multiple provisions of the IDCPA, including but not limited to Iowa Code §§ 537.7103(1)(f), 537.7103(2), 537.7103(2)(b), 537.7103(2)(d), 537.7103(3)(6); 537.7103(4), 537.7103(4)(a); and 537.7103(4)(b), amongst others.

*Respondeat Superior Liability*

22. The acts and omissions of the Defendant and its representatives employed as agents by Defendant Consumer Portfolio who communicated with Plaintiff as more further described herein, were committee within the time and space limits of their agency relationship with their principal, Defendant Consumer Portfolio.

23. The acts and omissions by Defendant Consumer Portfolio and its representative were incidental to, or of the same general nature as, the

responsibilities these agents were authorized to perform by Defendant Consumer Portfolio in collecting consumer debts.

24. By committing these acts and omissions against the Plaintiff, Consumer Portfolio and its representatives were motivated to benefit their principal, Consumer Portfolio.

25. The Defendant is therefore liable to the Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by the Defendant and its collection employees, including but not limited to violations of the FDCPA, in their attempts to collect this debt from the Plaintiff.

## V.  FIRST CLAIM FOR RELIEF: VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

26. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

27. Consumer Portfolio, and its agents, through the foregoing intentional and negligent acts and omissions, violated numerous and multiple provisions of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

28. As a result of each and every Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from the Defendant herein.

WHEREFORE, Plaintiff prays that judgment be entered against the Defendant:

## COUNT I.
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692 et seq.

- For an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against the Defendant and for Plaintiff;

- For an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) against the Defendant and for Plaintiff;

- For an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against the Defendant and for Plaintiff; and

- For such other and further relief as may be just and proper.

### VI.   SECOND CLAIM FOR RELIEF: VIOLATION OF THE IOWA DEBT COLLECTION PRACTICES ACT (IDCPA)

29. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

30. Consumer Portfolio, and its agents, through the foregoing intentional and negligent acts and omissions, violated numerous and multiple provisions of the IDCPA including, but not limited to, each and every one of the above-cited provisions of the IDCPA, Iowa Code § 537.7103 et seq.

31. As a result of each and every Defendant's violations of the IDCPA, Plaintiff is entitled to actual damages pursuant to § 537.5201(1)(y); statutory damages in an amount up to $1,000.00 pursuant to § 537.5201(1)(y); and, reasonable attorney's fees and costs pursuant to § 537.5201(8) from the Defendant herein.

**WHEREFORE,** Plaintiff prays that judgment be entered against the Defendant:

### COUNT II.
### VIOLATIONS OF THE IOWA DEBT COLLECTION PRACTICES ACT
### Iowa Code § 537.7103 et seq.

- For an award of actual damages pursuant to § 537.5201(1)(y) against the Defendant and for Plaintiff;

- For an award of statutory damages of $1,000.00 pursuant to § 537.5201(1)(y) against the Defendant and for Plaintiff;

- For an award of costs of litigation and reasonable attorney's fees pursuant to § 537.5201(8) against the Defendant and for Plaintiff; and

- For such other and further relief as may be just and proper.

### VII.   JURY DEMAND

The Plaintiff respectfully requests a trial by jury.

Respectfully submitted,

 /s/ L. Ashley Zubal
L. Ashley Zubal IS9998256
Marks Law Firm, P.C.
4225 University Avenue
Des Moines, IA 50311
(515) 276-7211
(515) 276-6280
ATTORNEY FOR PLAINTIFF